Filed 1/25/16  In re C.B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B265473 (Super. Ct. No.1436081) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMANDA V.,<br><br>    Defendant and Appellant. | |

A.V. (mother) appeals from the juvenile court order denying her Welfare and Institutions Code section 388[1] petition to modify an order bypassing family reunification services with her 21-month-old son, C.B.  (§§ 300, subd. (b); 361.5, subd. (b)(13).)  The court terminated the parental rights of mother and C.B.'s father, M.B., who is not a party to this appeal.  (§ 366.26.)  Mother contends that the trial court abused its discretion by denying her section 388 modification petition.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

On July 7, 2014, Child Welfare Services (CWS) filed a petition alleging that mother and father failed to protect and support their infant son, C.B., who was born in August 2013. (§ 300, subds. (b), (g).) C.B. had tested positive for opiates and morphine at birth, and suffered from rigidity, respiratory distress, and severe withdrawal symptoms which required his placement in a neonatal intensive care unit. The petition further alleged that mother and father suffered from substance abuse, and relapsed following treatment, and were unable to provide regular care for C.B. CWS detained C.B. on July 2, 2014, after mother was arrested for violating probation by testing positive for opiates.

On July 8, 2014, the juvenile court found that C.B. was a person described by section 300 and ordered his continued detention. On August 28, the court sustained the section 300 petition and scheduled a disposition hearing. In its disposition report, CWS asked the court to bypass services for mother pursuant to section 361.5, subdivision (b)(13), based on her extensive, chronic substance abuse and history of resistance to court-ordered treatment.

On September 11, 2014, the juvenile court denied reunification services for mother, pursuant to section 361.5, subdivision (b)(13), and granted her supervised visits. The court ordered father to participate in reunification services and set a six-month review hearing for March, 2015. During the March 25 hearing, father testified that he was actively using drugs. The court terminated his services and set a section 366.26 permanency planning hearing for May 21.

On March 25, 2015, mother filed a section 388 petition asking the court to change its order bypassing reunification services for her. Among other things, she alleged she was employed, had completed her outpatient drug program and a parenting program, and was regularly testing clean. She also alleged that C.B. called her mother

---

[2] We grant respondent's motion to augment the record on appeal with the documents attached thereto. (Cal. Rules of Court, rule 8.155, subd. (a).)

and became upset when he was separated from her. The court granted her a hearing and scheduled it for April 23, 2015.

The juvenile court conducted the section 388 hearing on April 23. Mother testified that she was working for two employers, for a total of 50 to 55 hours a week. She lived with C.B.'s father in a rented room. She cared "for him deeply," and had "a hard time just kicking him out and leaving him homeless," as she was "the only thing that he" had. She knew he had the ability to do "what needs to be done," and they attended AA or NA meetings together. She knew father had not relapsed since he completed a detoxification program on March 20th based on "his behavior," and because he took a test at her expense on April 22. Mother further testified that she visited C.B. twice monthly. He was very engaged during their visits, took direction from her, and displayed affection toward her.

Maternal grandmother testified that C.B. has a bond with mother. He runs to greet her, views her as his mom, and displays separation anxiety upon leaving her. When asked how she felt about mother's continuing to live with father, maternal grandmother said she didn't "have any contact with" him but felt that "there [was] a long way to go for the . . . father if he want[ed] to make a difference."

Cathleen Rafferty was mother's counselor at the treatment program which mother completed on March 10, 2015. Rafferty testified that mother aggressively worked on her recovery in the program, and continued to do so after completing it by frequently attending group meetings and consistently passing required tests.

In April 2015, CWS submitted addendum reports for the section 388 hearing and recommended that the court deny mother's petition for reunification services. In one report, CWS advised the court that in early April, Rafferty told a CWS social worker that "as long as . . . mother continues to keep her foundation then her only concern [was] the father." Rafferty "firmly believe[d]" that if father were in recovery, participated in treatment programs, and proved to be "just as diligent as mother, then their relationship would be less of a concern." Rafferty also told the social worker that "mother should decide between the father" and C.B. CWS further reported that "father

3

and mother are living together [although] father . . . testified on March 25, 2015, that he was actively using."

CWS acknowledged mother's successful completion of her most recent substance abuse program but remained concerned about her demonstrated "history of chronic, abusive, and extensive drug use." It described the many programs mother had attended, and her repeated relapses. Despite having attended "an inpatient treatment program from January 2012 through January 2013," she relapsed before she gave birth to C.B. in August 2013. Shortly after his birth, a criminal court ordered mother to complete a six-month residential treatment program because she received another positive drug test result. C.B. lived with her in that program following his release from the hospital. In early September, CWS opened a voluntary family maintenance case and provided mother and father with sobriety, parenting and housing support services. Mother relapsed immediately after completing the court-ordered program. Between April 25 and May 24, 2014, she tested positive for opiates six times; tested positive for heroin once; and failed to submit to testing on five consecutive days. On May 14, mother "nodded out" in her car, and drove away with C.B. in his car seat. On May 19, she tested positive for opiates and drove away with C.B. in the car. A few days later, mother and father signed a safety plan, which provided that the maternal grandparents would supervise all contact between C.B. and mother and father. Meanwhile, mother was excluded from a required after-care drug program because of her poor performance. She obtained a referral to another program, but tested positive for opiates on June 6, 2014. She successfully completed a detoxification program on June 11 but again tested positive for opiates on June 25, and was arrested for violating probation. Following her June 25, 2014 arrest, mother attended another treatment program, which she completed on March 10, 2015.

During the section 388 hearing, mother's counsel argued that she was "doing all of the things [she should and] staying sober" without the structure of residential treatment. Counsel for C.B. argued that granting the petition was not in his best interests, and stressed mother's substance abuse history with repeated relapses, and her ongoing relationship with father, an admitted substance abuser. The court found that

4

mother failed to meet her burden of showing it would be in C.B.'s best interests to grant her reunification services, and it denied her section 388 petition.

On June 18, 2015, the juvenile court terminated mother's and father's parental rights.

## DISCUSSION

Mother contends that the juvenile court abused its discretion by denying her section 388 petition for a modification of the order that bypassed reunification services for her. We disagree.[3]

A parent may file a petition to modify an order of the juvenile court. (§ 388.) But a modification will not be granted unless the "proposed change is in the best interests of the child." (*Id*., subd. (a)(2).) "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M*. (2002) 103 Cal.App.4th 681, 685-686.)

Here the juvenile court found that mother failed to demonstrate that granting reunification services to her would be in C.B.'s best interests. The record supports its findings. The evidence established that mother has a history of substance abuse, completion of multiple structured treatment programs, and relapses, as described above. She completed her most recent structured treatment program less than two months before the court heard the section 388 petition. CWS expressed concern about mother's ability to maintain sobriety while she associated with father. Father had been involved with mother for years while she abused substances, completed structured treatment programs, and relapsed. Her drug treatment counselor recognized the risk of their ongoing association, and stated that mother should choose between C.B. and father. On March 25, 2015, father testified that he was using drugs. On April 23, mother

---

[3] Mother also contends that the order terminating her parental rights must be reversed if we reverse the order denying her section 388 petition. Having decided to affirm the section 388 ruling, we will affirm the order terminating her parental rights.

testified that she was living with father.  The court could reasonably find mother had not shown it would be in C.B.'s best interests to provide mother reunification services.

DISPOSITION

The order denying mother's section 388 petition, and the order terminating her parental rights, are affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

6

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, and Toni Lorien, Sr. Deputy, for Plaintiff and Respondent.